## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SI FINANCIAL GROUP, INC., MARK D. ALLIOD, RHEO A. BROUILLARD, ROGER ENGLE, DONNA M. EVAN, MICHAEL R. GARVEY, ROBERT O. GILLARD, KEVIN M. MCCARTHY, KATHLEEN A. NEALON, DENNIS POLLACK, and ROBERT C. CUSHMAN SR.,<br>Defendants. | Case No. 3:19-cv-00321<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMAND |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of SI Financial Group, Inc. ("SI" or the "Company") against SI and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SI will be acquired by Berkshire Hills Bancorp, Inc. ("Berkshire") (the "Proposed Transaction").

2.      On December 11, 2018, SI and Berkshire issued a joint press release announcing

they had entered into an Agreement and Plan of Merger (the "Merger Agreement").  The Merger Agreement provides that immediately following the close of the Proposed Transaction, SI's wholly owned subsidiary, Savings Institute Bank and Trust Company ("Savings Institute"), will merge with and into Berkshire's wholly owned subsidiary Berkshire Bank (the "Bank Merger").  Under the terms of the Merger Agreement, SI stockholders will be entitled to receive 0.48 shares of Berkshire common stock per SI common share (the "Merger Consideration").  Based on the closing price of Berkshire's stock on February 19, 2019, the Merger Consideration has an implied value of $14.68 per SI share and the Proposed Transaction has an implied value of approximately $180 million.

3.       On February 26, 2019, SI filed a Definitive Proxy Statement on Form DEFM 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that SI stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SI's and Berkshire's financial projections, relied upon by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW; and (iii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SI stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.       In short, unless remedied, SI's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are

cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SI common stock.

9.      SI is a Maryland corporation and maintains its principal executive offices at 830 Main Street, Willimantic, Connecticut 06226.  SI is the holding company for Savings Institute. The Company's common stock is traded on the NASDAQ Global Market under the ticker symbol "SIFI."

10.     Defendant Mark D. Alliod ("Alliod") is Chairman of the Board and has been a director of the Company since 2005.

11.     Defendant Rheo A. Brouillard ("Brouillard") is President, Chief Executive Officer ("CEO") and a director of the Company.  Defendant Brouillard was first elected as

President and has served as a director of the Company since 2010.

12.     Defendant Roger Engle ("Engle") has been a director of the Company since 1998.

13.     Defendant Donna M. Evan (Evan") has been a director of the Company since 1996.

14.     Defendant Michael R. Garvey ("Garvey") has been a director of the Company since 2007.

15.     Defendant Robert O. Gillard ("Gillard") has been a director of the Company since 1999.

16.     Defendant Kevin M. McCarthy ("McCarthy") has been a director of the Company since 2013.

17.     Defendant Kathleen A. Nealon ("Nealon") has been a director of the Company since 2013.

18.     Defendant Dennis Pollack ("Pollack") has been a director of the Company since 2015.

19.     Defendant Robert C. Cushman Sr. ("Cushman") has been a director of the Company since 1993.

20.     The defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Berkshire is a Delaware corporation, with its principal executive offices located at 24 North Street, Pittsfield, Massachusetts 01201.  Berkshire is the parent of Berkshire Bank.  At September 30, 2018, Berkshire had approximately $12.0 billion in assets and 115 full service branches in Massachusetts, New York, Connecticut, Vermont, New Jersey, and Pennsylvania

providing personal and business banking, insurance, and wealth management services. Berkshire also offers mortgages and specialized commercial lending services in targeted national markets. Berkshire's common stock is traded on the New York Stock Exchange under the ticker symbol "BHLB."

22.     Berkshire Bank is Berkshire's Massachusetts-chartered trust company and wholly owned subsidiary, based in Pittsfield, Massachusetts.

23.     Savings Institute is SI's wholly-owned subsidiary. Established in 1842, Savings Institute is a community-oriented financial institution headquartered in Willimantic, Connecticut. Through its 23 branch locations, Savings Institute offers a full-range of financial services to individuals, businesses and municipalities within its market area.

<u>**CLASS ACTION ALLEGATIONS**</u>

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own SI common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of February 19, 2019, there were 12,059,785 shares of SI common stock outstanding, entitled to vote on the Proposed Transaction. All members of the Class may be identified from records maintained by SI or its transfer agent and may be notified of the pendency of this action by mail,

using forms of notice similar to that customarily used in securities class actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30.     SI is the parent holding company for Savings Institute.  Savings Institute operates 24 full-service offices throughout Windham, New London, Tolland, Hartford and Middlesex counties in Connecticut and Newport and Washington counties in Rhode Island.  Savings

Institute's primary lending area is eastern Connecticut and Rhode Island with additional concentrations in Massachusetts and New Hampshire.

31.     Savings Institute operates as a community-oriented financial institution offering a full range of financial services to consumers and businesses in its market area, including life insurance and annuities.  Savings Institute attracts deposits from the general public and uses those funds to originate one- to four-family residential, multi-family and commercial real estate, commercial business (including time share lending, loans to condominium associations and medical loans) and consumer loans.  Savings Institute also purchases commercial business loans, including loans fully guaranteed by the Small Business Administration  and the United States Department of Agriculture.  Savings Institute sells certain fixed-rate one- to four-family residential conforming loans Savings Institute originates in the secondary market, primarily with the servicing retained.  Such sales generate mortgage banking fee income.  The remainder of Savings Institute's loan portfolio is originated for investment. .

32.     On September 6, 2013, the Company acquired Newport Bancorp, Inc., the holding company for Newport Federal Savings Bank for 2,683,099 shares of Company common stock and $30.9 million in cash.  As a result of this transaction, the Company added six branches, $446.4 million in assets, $361.1 million in loans and $288.4 million in deposits to its franchise.

33.     On October 24, 2018, SI reported its financial results for the third quarter of 2018, including net income of $2.7 million, compared to net income of $2.2 million, for the third quarter of 2017.  Diluted earnings per share ("EPS") were $0.23 in the third quarter of 2018, compared to $0.19 in the third quarter of 2017.  Defendant Brouillard commented on the successful quarter, stating, "[t]he Bank continues to increase its focus on commercial lending, as evidenced by increases of $75.9 million in commercial loan originations and $2.4 million in interest income on

loans during 2018 compared to the prior year.  Similarly, deposits increased $42.0 million during

the current year, which included nearly $23.0 million in noninterest-bearing deposits."

34.     That same day the Board declared a cash dividend of $0.06 per share.

35.     Most recently, on February 27, 2019, SI reported its financial results for the fourth

quarter of 2018, including net income of $1.5 million, compared to a net loss of $1.6 million, for

the fourth quarter of 2017.  Diluted EPS were $0.13 in the fourth quarter of 2018, compared to

$0.13 diluted loss per share in the fourth quarter of 2017.  Defendant Brouillard commented on the

successful quarter, stating, "[d]eposit and loan growth during 2018 continued to drive performance

as core banking results once again improved year over year.  These improvements reflect

management's efforts in key areas such as growing low-cost demand deposits, reducing wholesale

funding and expense control as evidenced by a slightly higher net interest margin and a lower

efficiency ratio."

**Background of the Proposed Transaction**

36.     On April 27, 2016, the Board approved the engagement of KBW to provide

financial advisory and investment banking services to SI in connection with a possible business

combination with another company.  Thereafter, management of SI, with KBW's assistance,

selected seven financial institutions from 12 parties KBW previously reviewed with the Board to

contact with respect to a possible business combination with SI, one of which was Berkshire.

37.     In June 2016, KBW contacted the seven financial institutions.  Of the seven, six

signed non-disclosure agreements, of which four requested and received a confidential information

memorandum regarding SI.  All four of the financial institutions that received the confidential

information memorandum elected not to proceed with a business combination with SI.  Berkshire

indicated that it needed time to integrate its recently announced acquisition of First Choice Bank,

but would be interested in discussing a transaction at a later date.

38.    On August 2, 2016, defendant Brouillard encountered the CEO of one of the financial institutions that had been contacted by KBW (referred to in the Proxy Statement as "Company A") at an industry event, where they agreed to meet subsequently to discuss a possible business combination between SI and Company A.

39.    On December 1, 2016, Company A submitted a non-binding indication of interest with respect to the acquisition of SI in a 100% stock transaction with a fixed exchange ratio.

40.    On December 8, 2016, the Board approved the negotiation of a definitive agreement with Company A on the terms reflected in Company A's indication of interest letter. On December 14, 2016, SI and Company A entered into a letter agreement pursuant to which SI agreed to negotiate exclusively with Company A until January 31, 2017.  In late January 2017, discussions slowed pending resolution of certain due diligence matters.

41.    In late April 2017, Company A communicated that it would not be able to proceed with a transaction.

42.    In early January 2018, the CEO of a financial institution referred to in the Proxy Statement as "Company C" contacted defendant Brouillard about meeting to discuss a possible business combination.  On January 10, 2018, defendant Brouillard met with the CEO of Company C, who provided a non-binding indication of interest letter with respect to a business combination with SI for a 100% stock transaction in which shares of SI common stock would be converted into shares of Company C common stock with a value of $14.05.

43.    On April 24, 2018, Company C verbally communicated that Company C would increase the value of the merger consideration to $14.40.  Thereafter, the Board concluded that the indicated value of the transaction with Company C was insufficient and discontinued discussions

with Company C.

44.     On October 19, 2018, Michael Daly ("Daly"), the former President and CEO of Berkshire contacted defendant Brouillard to express interest in a possible combination between Berkshire and SI.  That same day, the CEO of another financial institution referred to in the Proxy Statement as "Company D" contacted defendant Brouillard to express interest in a possible combination between Company D and SI.

45.     On October, 23, 2018, Berkshire delivered a draft indication of interest letter that proposed the acquisition of SI by Berkshire in a 100% stock transaction with a fixed exchange ratio of between 0.43 and 0.45 shares of Berkshire common stock for each share of SI common stock.

46.     On November 1, 2018, Company D delivered an indication of interest letter that proposed a 100% stock transaction valued at $15.50 per share, with a fixed exchange ratio established at the time of signing a definitive merger agreement.

47.     That same evening, Berkshire delivered a revised indication of interest letter that proposed a 100% stock transaction with a fixed exchange ratio of 0.46 shares of Berkshire common stock.

48.     On November 2, 2018, the Board met and authorized management to negotiate a definitive agreement with Berkshire on the terms set forth in Berkshire's indication of interest letter and to enter into non-disclosure and exclusivity agreements with Berkshire.  The Board instructed management to request that Berkshire agree to form an advisory board comprised of the current directors of SI.

49.     Later that same day, SI and Berkshire executed a mutual non-disclosure agreement and an exclusivity agreement.

50.     On November 27, 2018, the CEO of Company D attempted to contact defendant Brouillard to determine whether SI would be interested in discussing a business combination between their respective companies.  Defendant Brouillard informed KBW of the call from Company D and directed KBW to inform Company D that SI remained subject to an agreement to negotiate exclusively with another company.

51.     On December 1, 2018, SI and Berkshire extended their exclusivity agreement to December 16, 2018.

52.     On December 5, 2018, Company D delivered to SI an unsolicited non-binding indication of interest letter that proposed a 100% stock transaction valued at $16.00 per share, with a fixed exchange ratio established at the time of signing a definitive merger agreement.  Company D expressed a willingness to provide up to 30% of the merger consideration in the form of cash should SI prefer.

53.     The next day, on December 6, 2018, Berkshire verbally communicated that it would increase the exchange ratio in the merger to 0.48 shares of Berkshire common stock for each share of SI common stock, which had an indicated value of $15.48, based on the closing price of Berkshire common stock on that date.  Berkshire also communicated that the exchange ratio of 0.48 was the most that Berkshire would offer.

54.     On December 7, 2018, the Board met and approved continuing to finalize the transaction with Berkshire under the terms of its revised proposal.

55.     On December 11, 2018, the Board met, KBW delivered its fairness opinion and the Board determined to approve and adopt the Merger Agreement and the transactions contemplated by it.

56.     Later on December 11, 2018, Berkshire and SI executed the Merger Agreement.

**The Proposed Transaction**

57.     On December 11, 2018, Berkshire and SI issued a joint press release announcing

the Proposed Transaction.  The press release stated, in relevant part:

> BOSTON, MA and WILLIMANTIC, CT, December 11, 2018, Berkshire Hills Bancorp, Inc. (NYSE: BHLB) ("Berkshire") and SI Financial Group, Inc. (NASDAQ: SIFI) ("SIFI") announced today that they have signed a definitive merger agreement under which Berkshire will acquire SIFI and its subsidiary, Savings Institute Bank and Trust Company ("Savings Institute"), in an all-stock transaction valued at $180 million based on Berkshire's stock price as of the close of business on December 10, 2018.
>
> Berkshire's total assets will increase to $13.6 billion including the $1.6 billion in acquired SIFI assets.  SIFI reported $1.3 billion in loans and $1.3 billion in deposits as of September 30, 2018.  This merger agreement increases Berkshire's market presence with 18 branches in Eastern CT and 5 branches in Rhode Island, adding to Berkshire's existing 9 Connecticut branches.
>
> "We're pleased to welcome Savings Institute's customers and employees to the Berkshire family," said Richard M. Marotta, Chief Executive Officer of Berkshire. "This transaction is a natural fit and brings with it a stable, longstanding deposit base with leading market position. The Savings Institute franchise strengthens our Northeast presence, as we gain scale in Connecticut and enter into attractive Rhode Island markets. Savings Institute is a well-established and trusted financial institution with deep client and community relationships. We look forward to expanding those relationships with the depth and breadth of our products and services. This partnership will produce attractive returns for both our existing shareholders and the new shareholders from SIFI joining us in this transaction."
>
> "We're excited to be joining with a successful regional bank that shares our commitment to community and customer service," commented Rheo A. Brouillard, President and Chief Executive Officer of SIFI. "Like Savings Institute, Berkshire Bank was established in the mid to late 1800s and has grown over the years as a result of that commitment. The combination of our two banks will provide greater convenience and a broader array of products to our customers who will continue to have the personalized service they have come to expect."
>
> **TRANSACTION SUMMARY**
>
> Under the terms of the merger agreement, each outstanding share of SIFI common stock will be exchanged for 0.48 shares of Berkshire Hills common stock.  Upon closing, any outstanding SIFI options will be vested and converted into Berkshire options.

**Insiders' Interests in the Proposed Transaction**

58.     SI insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and SI's public stockholders.

59.     Notably, certain Company insiders have secured positions for themselves with the combined company.  Defendant Brouillard will join the board of directors of Berkshire and Berkshire Bank upon completion of the Proposed Transaction.  Additionally, Berkshire Bank will create an advisory board and will invite each of the Individual Defendants, other than defendant Brouillard, to join the advisory board.  Moreover, Laura L. Gervais ("Gervais"), SI's Executive Vice President, has entered into an agreement with SI and Berkshire pursuant to which she will provide consulting services to Berkshire following completion of the Proposed Transaction and an additional payment as consideration for certain restrictive covenants.  Furthermore, according to the December 11, 2018 press release announcing the Proposed Transaction, "[k]ey business leaders from SIFI will remain with Berkshire Bank in continuing leadership roles."

60.     Moreover, SI's named executive officers stand to receive substantial cash severance payments in connection with the Proposed Transaction, as set forth in the following table:

| Named Executive Officers | Cash[1] ($) | Equity[2] ($) | Pension/ NQDC[3] ($) | Perquisites/ Benefits[4] ($) | Total ($) |
|---|---|---|---|---|---|
| Rheo A. Brouillard | 1,980,045 | — | 193,314 | 61,883 | 2,235,242 |
| Laurie L. Gervais | 987,535 | — | 136,758 | 26,650 | 1,150,943 |
| Paul R. Little | 808,765 | 5,560 | — | 62,398 | 876,723 |
| Lauren L. Murphy | 400,702 | — | 1,047,283 | 62,398 | 1,510,383 |
| Jonathan S. Wood | 498,622 | — | — | 31,717 | 530,339 |

**The Proxy Statement Contains Material Misstatements and Omissions**

61.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SI's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

62.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SI's and Berkshire's financial projections, relied upon by the Company's financial advisor KBW in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW; and (iii) Company insiders' potential conflicts of interest.  Accordingly, SI stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning SI's and Berkshire's Financial Projections***

63.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

64.     First, the Proxy Statement omits material information regarding SI management's financial projections and the financial analyses performed by the Company's financial advisor KBW.

65.     For example, in connection with KBW's *SI Financial Discounted Cash Flow Analysis*, the Proxy Statement states:

> KBW performed a discounted cash flow analysis of SI Financial to estimate a range for the implied equity value of SI Financial. In this analysis, KBW used financial forecasts and projections relating to the net income and assets of SI Financial provided by SI Financial management, and assumed discount rates ranging from 12.0% to 15.0%. The range of values was derived by adding (i) the present value of the estimated excess cash flows that SI Financial could generate over the five-year period from 2019 to 2023 as a standalone company and (ii) the present value of SI Financial's implied terminal value at the end of such period. KBW assumed

that SI Financial would maintain a tangible common equity to tangible asset ratio of 8.00% and would retain sufficient earnings to maintain that level. In calculating the terminal value of SI Financial, KBW applied a range of 11.0x to 15.0x SI Financial estimated 2024 net income. This discounted cash flow analysis resulted in a range of implied values per share of SI Financial common stock of $12.13 per share to $16.29 per share.

Proxy Statement at 57.

66.     Similarly, in connection with KBW's *Berkshire Hills Discounted Cash Flow Analysis*, the Proxy Statement states:

KBW performed a discounted cash flow analysis of Berkshire Hills Bancorp to estimate a range for the implied equity value of Berkshire Hills Bancorp. In this analysis, KBW used publicly available consensus "street estimates" of Berkshire Hills Bancorp (per S&P Global Market Intelligence based on Berkshire Hills Bancorp management's guidance) and assumed long-term growth rates for Berkshire Hills Bancorp provided by Berkshire Hills Bancorp management, and assumed discount rates ranging from 10.0% to 13.0%. The range of values was derived by adding (i) the present value of the estimated excess cash flows that Berkshire Hills Bancorp could generate over the five-year period from 2019 to 2023 as a standalone company, and (ii) the present value of Berkshire Hills Bancorp's implied terminal value at the end of such period. KBW assumed that Berkshire Hills Bancorp would maintain a tangible common equity to tangible asset ratio of 8.00% and would retain sufficient earnings to maintain that level. In calculating the terminal value of Berkshire Hills Bancorp, KBW applied a range of 11.0x to 15.0x Berkshire Hills Bancorp estimated 2024 net income. This discounted cash flow analysis resulted in a range of implied values per share of Berkshire Hills Bancorp common stock of $32.22 per share to $45.80 per share. .

*Id*.

67.     The Proxy Statement fails, however, to disclose: (i) the estimated excess cash flows that each of SI and Berkshire could generate over the five-year period from September 30, 2019 to 2023 as stand-alone companies; and (ii) estimated 2024 net income for each of SI and Berkshire.  Additionally, the Proxy Statement fails to disclose the 2018-2020 GAAP Net Income figures for each of SI and Berkshire Hills used in KBW's *Relative Contribution Analysis*.

68.     Moreover, the Proxy Statement states that KBW's consideration of financial information relevant to its analyses, included, among others:

- financial and operating forecasts and projections of SI Financial that were prepared by, and provided to KBW and discussed with KBW by, SI Financial management and that were used and relied upon by KBW at the direction of such management and with the consent of the SI Financial board of directors;

- publicly available consensus "street estimates" of Berkshire Hills Bancorp, as well as assumed long-term Berkshire Hills Bancorp growth rates provided to KBW by Berkshire Hills Bancorp management, all of which information was discussed with KBW by Berkshire Hills Bancorp management and used and relied upon by KBW based on such discussions, at the direction of SI Financial management and with the consent of the SI Financial board of directors; and

- estimates regarding certain pro forma financial effects of the merger on Berkshire Hills Bancorp (including, without limitation, the cost savings and related expenses expected to result or be derived from the merger) that were prepared by, and provided to and discussed with KBW by, Berkshire Hills Bancorp management and that were used and relied upon by KBW based on such discussions, at the direction of SI Financial management and with the consent of the SI Financial board of directors.

*Id*. at 48.  The Proxy Statement, however, fails to disclose estimates regarding certain pro forma financial effects of the merger on Berkshire Hills (including, without limitation, the cost savings and related expenses expected to result or be derived from the merger) that were prepared by, and provided to and discussed with KBW by, Berkshire Hills management and that were used and relied upon by KBW based on such discussions, at the direction of SI management and with the consent of the Board.

69.     The omission of this information renders the statements in the "Certain Prospective Financial Information" and "Opinion of SI Financial's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning KBW's Financial Analyses***

70.     The Proxy Statement describes KBW's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this

16

information, as described below, SI's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to SI's stockholders.

71.     With respect to KBW's *Berkshire Hills Bancorp Selected Companies Analysis* and *SI Financial Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by KBW; and (ii) any benchmarking analyses for SI in relation to the companies analyzed by KBW.

72.     With respect to KBW's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected transactions analyzed by KBW; and (ii) any benchmarking analyses for SI in relation to the target companies analyzed by KBW.

73.     With respect to KBW's *Relative Contribution Analysis*, the Proxy Statement fails to disclose: (i) the 2018-2020 GAAP Net Income figures for both SI and Berkshire Hills used in the analysis.

74.     With respect to KBW's *Forecasted Pro Forma Financial Impact Analysis*, the Proxy Statement fails to disclose: (i) the closing balance sheet estimates as of June 30, 2019 for Berkshire and SI, extrapolated from historical data using growth rates for SI and Berkshire provided by Berkshire management; (ii) the pro forma assumptions provided by Berkshire, including, among other things, the cost savings and related expenses expected to result from the merger and certain accounting adjustments and restructuring charges assumed with respect thereto and financial forecasts and projections relating to the net income of SI; and (iii) the specific EPS and tangible book value per share accretion and dilution figures resulting from the analysis as well

as the specific estimates of pro forma Berkshire's tangible common equity to tangible assets ratio, Tier 1 Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Risk-Based Capital Ratio and Total Risk Based Capital Ratio as of June 30, 2019.

75.     With respect to KBW's *SI Financial Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that Berkshire could generate over the five-year period from 2019 to 2023 as a standalone company; (ii) the definition of how the excess cash flows were calculated; (iii) SI's estimated 2024 net income; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 12.0% to 15.0% utilized by KBW; (v) quantification of the implied terminal value; and (vi) the perpetuity growth rates for SI implied by the analysis.

76.     With respect to KBW's *Berkshire Hills Bancorp Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that Berkshire could generate over the five-year period from 2019 to 2023 as a standalone company; (ii) the definition of how the excess cash flows were calculated; (iii) Berkshire's estimated 2024 net income; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 13.0% utilized by KBW; (v) quantification of the implied terminal value; and (vi) the perpetuity growth rates for Berkshire implied by the analysis.

77.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

78.     The omission of this information renders the statements in the "Opinion of SI Financial's Financial Advisor" and "Certain Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest of Company Insiders***

79.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by SI insiders.

80.     As set forth above, certain Company insiders have secured positions for themselves with the combined company.  Defendant Brouillard will join the board of directors of Berkshire and Berkshire Bank upon completion of the Proposed Transaction.   Additionally, Berkshire Bank will create an advisory board and will invite each of the Individual Defendants, other than defendant Brouillard, to join the advisory board.  Moreover, Gervais has entered into an agreement with SI and Berkshire pursuant to which she will provide consulting services to Berkshire following completion of the Proposed Transaction and an additional payment as consideration for certain restrictive covenants.  Furthermore, according to the December 11, 2018 press release announcing the Proposed Transaction, "[k]ey business leaders from SIFI will remain with Berkshire Bank in continuing leadership roles."

81.     However, the Proxy Statement fails to disclose the details of all employment-related discussions and negotiations that occurred between SI and Berkshire executive officers and directors, including who participated in all such communications, when they occurred and their content.   The Proxy Statement further fails to disclose whether any of Berkshire's prior proposals or indications of interest mentioned management retention in the combined company.

82.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

83.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of SI Financial's Directors and Executive Officers in the Merger that are Different From Yours" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

84.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

85.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

86.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

87.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company and Berkshire, the financial analyses performed by the Company's financial advisor and Company insiders' potential conflicts of interest.  The defendants were at least

negligent in filing the Proxy Statement with these materially false and misleading statements.

88.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

89.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

90.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## <u>COUNT II</u>

### Class Claims Against the Individual Defendants for<br>Violations of Section 20(a) of the Exchange Act

91.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

92.     The Individual Defendants acted as controlling persons of SI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of SI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

93.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

94.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in the making of the Proxy Statement.

95.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

96.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

97.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, SI's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SI, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying

Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SI stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  March 5, 2019                        **LEVI & KORSINSKY, LLP**

                                    By    */s/ Shannon L. Hopkins*
                                                Shannon L. Hopkins (CT29744)
                                                1111 Summer Street, Suite 403
                                                Stamford, CT 06905
                                                Tel.: (203) 992-4523
                                                Fax: (212) 363-7171
                                                Email: shopkins@zlk.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036

Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.      I have reviewed the complaint in this matter against SI Financial Group, Inc. ("SI Financial") and others and authorized the filing thereof.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      My transactions in SI Financial securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5.      I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):


6.      I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

*stephen bushansky*
stephen bushansky (Mar 4, 2019)
Stephen Bushansky

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price per Share |
|---|---|---|---|
| Purchase | 1/21/2011 | 100 | $10.00 |
|  |  |  |  |
|  |  |  |  |